ADKINS, Justice.
This is an appeal from a final judgment in mandamus for electors and against the Board of County Commissioners seeking reapportionment, wherein the trial court declared Fla.Stat. § 124.01(3), F.S.A., to be unconstitutional. We have jurisdiction. Fla.Const., art. V, § 3(b)(1), F.S.A.
Fla.Const., art. VIII, § 1(e), F.S.A., reads as follows:
“Commissioners. Except when otherwise provided by county charter, the governing body of each county shall be a board of county commissioners composed of five members serving staggered terms of four years. After each decennial census the board of county commissioners shall divide the county into districts of contiguous territory as nearly equal in population as practicable. One commissioner residing in each district shall be elected by the electors of the county.”
Fla.Stat. § 124.01(3), F.S.A., reads as follows:
“The board of county commissioners shall from time to time, fix the boundaries of the above districts so as to keep them as nearly equal in- proportion to population as possible; provided, that changes made in the boundaries of county commissioner districts pursuant to this section shall be made only in odd-numbered years.”
The respondents (hereinafter referred to as the electors) filed a petition for writ of mandamus on December 30, 1975, seeking an order requiring the Board of County Commissioners to reapportion in 1976 so that the county commissioners’ districts would be as nearly equal in proportion to population as possible. The electors had requested the petitioners (hereinafter referred to as the Board) to redistrict pursuant to the above constitutional and statutory provisions. The electors say that the districts are no longer equal in proportion to population due to the increase in population, and the refusal of the Board to redistrict postpones until the general election of *803 1978 the election of county commissioners who would truly provide the residents of the county equal representation under the “one man, one vote” concept.
The alternative writ was issued and in its return the Board stated that the boundaries of the five county commissioners’ districts were redistricted in 1973, and the county is divided into “nearly equal districts in proportion to population as required by law.”
After a hearing on the return to the alternative writ, the trial judge ordered that the peremptory writ be issued and that redistricting be completed before qualification time for the county commissioners forthcoming elections in 1976. The order of the judge contained the following:
“4. That Florida Statute 124.01(3) is unconstitutional in that it takes away constitutional rights which are guaranteed by the 14th Amendment of the Federal Constitution.”
The trial judge apparently held that the electors were being effectively disenfranchised by unequal population districts, so that the statute was unconstitutional in requiring the electors to wait until an odd-numbered year for such redistricting.
Although Fla.Const., art. VIII, § 1(e), F.S.A., quoted above, requires that commissioners live in certain districts and that these residence districts are to be “as nearly equal in population as practicable,” the county commissioners run at large in the county.
In Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), the Supreme Court was considering an election plan for a city council under which four members were elected at large without regard to residence and seven were elected by voters of the entire city, although required to reside in one of the seven boroughs. The Court reiterated that the fundamental principle of representative government in this country is one of equal representation for equal numbers of people without regard to race, sex, economic status, or place of residence within a state. The court then said:
“The Seven-Four Plan makes no distinction on the basis of race, creed, or economic status or location. Each of the 11 councilmen is elected by a vote of all the electors in the city. The fact that each of the seven councilmen must be a resident of the borough from which he is elected, is not fatal. In upholding a residence requirement for the election of state senators from a multi-district county we said in Fortson v. Dorsey, 379 U.S. 433, 438, 85 S.Ct. 498, 501, 13 L.Ed.2d 401:
“ ‘It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation. Each district’s senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in his home district; thus in fact he is the county’s and not merely the district’s senator.’
“By analogy the present consolidation plan uses boroughs in the city ‘merely as the basis of residence for candidates, not for voting or representation.’ He is nonetheless the city’s, not the borough’s, councilman. In Fortson there was substantial equality of population in the senatorial districts, while here the population of the boroughs varies widely. If a borough’s resident on the council represented in fact only the borough, residence being only a front, different conclusions might follow. But on the assumption that Reynolds v. Sims controls, the constitutional test under the Equal Protection Clause is whether there is an ‘invidious’ discrimination.” 87 S.Ct. 1554, 1555-56.
See also Reed v. Mann, 237 F.Supp. 22 (N.D.Ga.1964).
The Supreme Court in Dusch v. Davis, supra, upheld the plan even though the resident districts had wide discrepancy in population, reasoning that the councilmen *804 represented the entire city since they ran at large. For this reason the argument of the electors that the Fourteenth Amendment of the United States Constitution is violated is without merit.
Under the above-quoted provisions of the Florida Constitution, it is within the discretion of the Board after a study of the decennial census figures to decide whether the existing districts are as nearly equal as possible. Recognizing the constant shift in the population of Florida, the Legislature by Fla.Stat. § 124.01(3), F.S.A., has given the Board authority to fix the boundaries of the districts from time to time so as to keep them as nearly equal in population as possible. This can only be done in “odd-numbered years.” The electors are attempting to do this in an even-numbered year.
Judicial relief is appropriate only if the Board fails to reapportion according to federal and state constitutional requisites. It could be that, decennial or otherwise, the scheme of selecting county commissioners under the circumstances of a particular case would operate to minimize or cancel out the voting strength of racial or political elements of the voting population. When this is demonstrated the judiciary will consider whether the apportionment plan passes constitutional muster. See In re Apportionment Law, Senate Joint Res. No. 1305, 263 So.2d 797 (Fla.1972).
In Reece v. Dallas County, Alabama, 505 F.2d 879 (5th Cir. 1974), relied upon by the electors, there was a showing that an identified group of residents were the object of discrimination. The court said that even this would not be sufficient unless it were further shown that the malapportionment was invidious or discriminatory. This case is not in conflict with Dusch v. Davis, supra.
The electors have failed to show that the present apportionment plan operates to minimize or cancel out the voting strength of racial or political elements of the voting population. There is no showing of invidious discrimination.
In fact, the districts were reapportioned in 1973. The Constitution and the statute vests the Board with a reasonable range of discretion in fixing the boundaries of county commissioners’ districts and does not require absolute equality in population. See Ryan v. State ex rel. Ford, 60 So.2d 188 (Fla.1952). Fla.Stat. § 124.01(3), F.S.A., was enacted to implement Fla.Const. art. VIII, § 1(e), F.S.A. It is not unreasonable to require redistricting only every two years, considering the cost and other burdens placed upon the Board in performing this function. There has been no showing that there was such an increase in population as to result in invidious discrimination for any group.
Therefore, the judgment of the trial judge is reversed, the peremptory writ of mandamus is discharged, and the cause is remanded to the trial court with instructions to enter judgment for the Board of County Commissioners.
It is so ordered.
OVERTON, C. J., and ROBERTS, BOYD, ENGLAND, SUNDBERG and HATCH-ETT, JJ., concur.