James G. Yaeger Lee County Attorney Fort Myers
QUESTIONS:
1. Does a noncharter county have the power to adopt an ordinance prohibiting discrimination in the areas of employment, housing, and public accommodations and to provide that a violation of such an ordinance is a misdemeanor?
2. Does a noncharter county have the power to establish an independent commission, appointed by the board of county commissioners but not subject to any review by the board, which would receive and investigate complaints, hold hearings, take evidence and testimony, make findings of fact, and, upon a finding of discrimination, issue orders for affirmative relief?
3. Assuming that the above questions are answered in the negative, is it necessary for a noncharter county to obtain a special act of the Legislature in order to prohibit discriminatory practices within the county?
SUMMARY:
Noncharter counties possess no constitutional powers of their own, and Lee County is not empowered to adopt an ordinance generally prohibiting discrimination in the areas of employment, housing, and public accommodations and making a violation of such ordinance a misdemeanor. Without specific legislative authority, the board of county commissioners of a noncharter county, such as Lee, is not authorized to establish a human relations commission as a federal deferral agency, with broad powers to investigate problems of discrimination and grant affirmative relief.
AS TO QUESTION 1 AND 2:
As questions 1 and 2 are interrelated, they will be answered together.
According to your letter, Lee County is involved in the preparation of an ordinance prohibiting discrimination in employment, housing, and public accommodations based upon race, color, religion, national origin, sex, and marital status and, under certain conditions, age and physical handicap. The proposed ordinance would establish a human relations commission which would be authorized to study the problems of discrimination, issue publications, and initiate, investigate, and pass upon complaints charging unlawful discriminatory practices. The commission would have the authority to grant affirmative relief such as reinstatement of employees or back pay. Members of the commission would be appointed by the Board of County Commissioners for Lee County but would not be subject to any review by the county commissioners. You state in the memorandum of law accompanying your request that the county's human relations commission would have the status of a Deferral 706(E) Agency under the Equal Employment Opportunities Commission, which, according to your letter, requires that an agency, in order to become a 706(E) Deferral Agency, `have the authority to grant and seek affirmative relief and/or institute criminal proceedings.' See generally42 U.S.C. § 2000e, the Equal Employment Opportunities Act, and42 U.S.C. § 2000e-4(g)(1) and 8(b) which authorize the commission to cooperate with and utilize regional, state, and local agencies.
This office has previously stated that noncharter counties possess no constitutional powers of their own; rather they may exercise only those powers which are conferred on them by general or special law. See AGO's 079-11, 078-131, 077-81, 077-38, 076-20, and 069-99. See also s. 1(f), Art. VIII, State Const., which provides that `[c]ounties not operating under county charters shall have such power of self-government as is provided by general or special law'; Davis v. Gronemeyer, 251 So.2d 1 (Fla. 1971); State ex rel. Volusia County v. Dickinson, 269 So.2d 9, 11 (Fla. 1972); and Townley v. Marion County, 343 So.2d 1312 (1 D.C.A. Fla., 1977). Cf. s. 5(c), Art. II, State Const. (the powers, duties, compensation and method of payment of state and county officers shall be fixed by law); Edgerton v. International Company, Inc., 89 So.2d 488 (Fla. 1956); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); White v. Crandon,156 So. 303 (Fla. 1934); and AGO 076-173 (it is fundamental that the powers and duties of county commissioners are purely statutory, and county commissioners have only such authority and duties as are conferred or prescribed by the Constitution or statutes; and, when there are any doubts as to the existence of authority, it should not be assumed). The applicable principles of law enunciated under earlier constitutional and statutory precursors of s. 125.01(1), F. S., and other statutes are still applicable with equal force and effect to the current constitutional and statutory provisions governing the powers of noncharter counties.
I am not aware of any statute, nor has any general or special law been brought to my attention, which authorizes a noncharter county to adopt an ordinance prohibiting discrimination in the general areas of employment, housing, and public accommodations, making a violation of the ordinance a misdemeanor and creating a human relations commission with the authority to grant affirmative relief.
Section 125.01(1), F. S., which establishes the general powers of noncharter counties, contains no express provision consistent with any general or special law authorizing legislation against discrimination generally in the areas of employment, housing, and public accommodations or the establishment of a human relations commission by the county with the authority to rule upon complaints charging unlawful discriminatory practices. While s.125.01(1)(w) generally provides that a noncharter county may perform `any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law,' this provision has not been extensively litigated. However, if liberally construed (see s. 125.01[3][a] and [b]), it would operate to vest plenary powers of self-government in noncharter counties, negating the need for the remaining provisions of s.125.01(1) and would conflict with the express provisions of s. 1(f), Art. VIII of the State Constitution, which provides that `[c]ounties not operating under county charter shall have such power of self-government as is provided by general or special law'; the distinction between charter and noncharter counties prescribed by the constitution would thus be eliminated. Therefore, this office has previously concluded that, in light of the foregoing considerations and the substantial authority which has limited a noncharter county's powers to those which are expressly granted in the statutes or necessarily implied therefrom, the principle of ejusdem generis, which limits general words or phrases following an enumeration of specific things to things of the same class or genus as those comprehended by the preceding specific terms, should be applied to s. 125.01(1)(w). Thus, only activities in the nature of those described elsewhere in s. 125.01(1) would be authorized by s. 125.01(1)(w). See AGO's 077-38 and 079-11. See generally Arnold v. Shumpert, 217 So.2d 116
(Fla. 1968); Roberts v. American National Bank, 121 So. 554 (Fla. 1929); and Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918). Cf. State v. Orange County, 281 So.2d 310 (Fla. 1973) (Dekle, J., dissenting).
Accordingly, I am of the opinion that, until judicially determined to the contrary, and in the absence of a statute so providing, a noncharter county is not empowered to adopt an ordinance generally prohibiting discrimination in the areas of employment, housing, and public accommodations, making a violation of such ordinance a misdemeanor and establishing a human relations commission with the authority to grant affirmative relief.
AS TO QUESTION 3:
In light of the answer to the preceding questions, I am of the opinion that it is necessary for a noncharter county to obtain legislative authorization in order for the board of county commissioners, as the governing body of the county, to prohibit discrimination within the county. If any such proposed legislation, however, contemplates the establishment of an official body possessing governmental powers and duties, s. 11(a)(1), Art. III, State Const., would appear to prohibit such legislation. See AGO 073-217 in which this office stated that it would `appear gravely improbable that [a separate county office of county administrator] could be created by special law, vesting certain of the sovereign powers of the county in the office of the county administrator,' and cf. Brandon Planning and Zoning Authority v. Burns, 304 So.2d 121 (Fla. 1974).
In conclusion, it is my opinion that a noncharter county is not authorized to legislate generally against discrimination in the areas of employment, housing, and public accommodations nor to establish a housing relations commission as a federal deferral agency, with the power to grant affirmative relief.
Prepared by:
Joslyn Wilson Assistant Attorney General